Indira J. Cameron-Banks (Cal. Bar No. 248634)
*Indira@CameronJones.Law*
Terrence Jones (Cal. Bar No. 256603)
*Terrence@CameronJones.Law*
**CAMERON JONES LLP**
8383 Wilshire Boulevard, Suite 800
Beverly Hills, California 90211
424.757.0585 | www.cameronjones.law

Attorneys for Plaintiff JANE DOE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, an individual,<br><br>       Plaintiff,<br><br>     v.<br><br>JONATHAN MAHBOUBI-FARDI a/k/a JONATHAN MAHBOUBI, an individual, DARYOUSH MAHBOUBI-FARDI a/k/a DARYOUSH MAHBOUBI, an individual, EDNA MAHBOUBI-FARDI a/k/a MAHIE MAHBOUBI-FARDI, a/k/a EDNA MAHBOUBI, an individual, N VISION MANAGEMENT, LLC a Delaware Corporation; and DOES 1-10, inclusive,<br><br>       Defendants. | Case No.   2:23-CV-04370<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Violation of the Trafficking Victims Protection Act<br><br>2. Violation of Racketeer Influenced and Corrupt Organizations Act ("RICO")<br><br>3. Failure to Pay Wages and Overtime Wages & Penalties (Cal. Labor Code §§ 510, 1194, 1198)<br><br>4. Extortion<br><br>5. Conversion<br><br>6. Defamation<br><br>7.  Battery<br><br>    **Demand for Jury Trial** |

COMES NOW Plaintiff Jane Doe ("Plaintiff" or "DOE"), who brings this Complaint for Damages and Demand for Jury Trial ("Complaint"), rested upon this Court's subject matter jurisdiction over federal and attendant claims, against Defendants— Jonathan Mahboubi-Fardi a/k/a Jonathan Mahboubi (JONATHAN), Daryoush Mahboubi-Fardi a/k/a Daryoush Mahboubi ("DAR"), Edna Mahboubi-Fardi A/K/A Mahie Mahboubi-Fardi, a/k/a Edna Mahboubi ("MAHIE"), and N Vision Management, LLC (N VISION), and Does 1-10, inclusive (collectively, "DEFENDANTS")—alleging, based upon information and belief, the following with respect to Defendants' identities and conduct:

## I.

## NATURE OF THE CASE

1. The International Labor Organization, a specialized agency of the United Nations, defines modern slavery as being "comprised of two principal components – forced labor and forced marriage" as both situations result in the exploitation of a person who "cannot refuse or cannot leave because of threats, violence, deception, abuse of power or other forms of coercion."  Article 2 of the Forced Labor Convention of 1930 defines forced labor as "all work or service which is exacted from any person under the menace of any penalty and for which the said person has not offered himself voluntarily."[1]  It is hard to believe that modern slavery exists anywhere, let alone in the most powerful nation in the world.  And while gone are the days of chains and iron bondage, "[t]he scourge of modern slavery has by no means been relegated to history."[2]  In 2022 alone, there were 27.6 million people, over 11.8 million of which were women and girls, who found themselves

---

[1]*https://www.ilo.org/dyn/normlex/en/f?p=NORMLEXPUB:12100:0::NO::P12100_ILO_CODE:C029 (last accessed June 2, 2023)*

[2]*https://www.ilo.org/wcmsp5/groups/public/@ed_norm/@ipec/documents/publication/wcms_854795.pdf (last accessed June 2, 2023)*

in a forced labor situation, and another 22 million in forced marriage.[3]

2.  Indeed, DOE, a successful and vibrant college-educated woman, entrepreneur, and financial services industry professional never imagined in her wildest dream, or nightmare, that she would find herself counted amongst these global statistics.  Neither destitute nor desperate for financial security, which she had achieved on her own, she was lured by the promise of marriage and romantic interest by a con-man to uproot her life in Florida to move to California in late 2021.

3.  Thus began her surreal eight-month nightmare where all her freedoms – financial and physical – were severely restricted through violent extortion, and she was forced by the man and his family into forced labor to serve them, or modern-day slavery.  Defendants JONATHAN MAHBOUBI ("JONATHAN"), and his parents DARYOUSH MAHBOUBI ("DAR") and EDNA "MAHIE" MAHBOUBI ("MAHIE") believed that being betrothed to JONATHAN meant that DOE was beholden to them – to not only serve as a vessel to hold JONATHAN's financial debts and to hide his assets, but also a source of compliant free labor.  This message was reinforced with constant death threats and physical violence by JONATHAN, expressly condoned and supported by DAR and MAHIE.

4.  While DOE remained alive after depraved physical and mental abuse, and eventually escaped, she was left destitute, traumatized and alone to rebuild her life. The con-man and his family had not only isolated DOE in California, but drained all of her financial resources, stole her valuable personal property, destroyed her creditworthiness, and left her with physical and emotional scarring.

5.  This lawsuit is intended to redress the harm caused to DOE, who was held captive, and harmed -- physically, emotionally, and financially -- by DEFENDANTS and their criminal enterprise.

---

[3] *Id.*

3

## II.

## JURISDICTION AND VENUE

6.   Jurisdiction over this action is proper pursuant to 18 U.S.C. § 1595(d) for violations of the Trafficking Victims Protection Act, 18 U.S.C. § 1964(c)  for violations of 18 U.S.C. § 1962, and the Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(a).

7.  Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred within this judicial district, namely, within Los Angeles County.

8.  The Court has personal jurisdiction over Defendant JONATHAN who resides within the Central District of California.

9.  The Court has personal jurisdiction over Defendant DAR who resides within the Central District of California.

10. The Court has personal jurisdiction over Defendant MAHIE who resides within the Central District of California.

11. The Court has personal jurisdiction over Defendant N VISION in that such entity is licensed and registered to do business, and based on information and belief, does substantial business within the Central District of California.

## III.

## PARTIES & RELEVANT NON-PARTIES

12. Jane Doe ("DOE") is an individual who currently resides in Los Angeles County, and was at all times material to the allegations of this Complaint.

13. Jonathan Mahboubi-Fardi a/k/a Jonathan Mahboubi (JONATHAN) is an individual who currently resides in Los Angeles County, and was at all times material to the allegations of this Complaint.

14. Daryoush Mahboubi-Fardi a/k/a Daryoush Mahboubi ("DAR"), is an individual who currently resides in Los Angeles County, and was at all times

4

material to the allegations of this Complaint.

15. Edna Mahboubi-Fardi A/K/A Mahie Mahboubi-Fardi, a/k/a Edna Mahboubi ("MAHIE") is an individual who currently resides in Los Angeles County, and was at all times material to the allegations of this Complaint.

16. N Vision Management, LLC (N VISION) is a corporation organized under the laws of California and having its principal place of business in Los Angeles County and was so at all time material to this Complaint.

17. Plaintiff is informed and believes, and based thereon alleges, that at all times relevant to this Complaint, Defendants, and each of them, were acting as the agent, servant, employee, subsidiary, joint venturer, affiliate, partner, assignee, successor-in-interest, alter ego or other representative of each other, and were acting within the course and scope of their agency, servitude, employment, subsidy, joint venture, affiliation, partnership, assignment, succession, alter ego, and/or representation, with the full knowledge, consent, permission, authorization and ratification, either express or implied, of each of the other Defendants in performing the acts alleged in this Complaint.

18. Plaintiff is ignorant of the true names and capacities of the defendants sued as DOES 1 through 10, inclusive (the "DOE Defendants") and, therefore, sues these DOE Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

19. Plaintiff is informed and believes, and on that basis alleges, that the DOE Defendants acted wrongfully, maliciously, intentionally and negligently; that each is responsible in some manner for the events and happenings complained of herein; and that Plaintiff's injuries, as alleged herein, were proximately caused by the DOE Defendants, either through each Defendant's own conduct or through the conduct of their agents and/or employees.

20. Plaintiff is informed and believes, and on that basis alleges, that at all times

material to the allegations of this Complaint, each of the Defendants, whether named or fictitiously named as a DOE Defendant, were the merging entity, merged entity, subsidiary, acquiring corporation, agent and/or employee of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and/or employment with knowledge, advice, permission and consent of each other.

21. As used herein, the term "Defendants" means all Defendants, both jointly and severally, and references by name to any one Defendant shall include and reference all Defendants, both individual, corporate, and business entities, both specifically named and unnamed, and both jointly and severally to all.

22. Plaintiff is further informed and believes, and on that basis allege, that at all times material to the allegations of this Complaint, Defendants caused, aided, abetted, facilitated, encouraged, authorized, permitted and/or ratified the wrongful acts and omissions described in this Complaint.

## IV.
## FACTUAL ALLEGATIONS

23. DEFENDANTS used extortion, physical harm and intimidation against DOE in order to steal hundreds of thousands of dollars worth of her funds and personal property, destroy her creditworthiness, and force her to perform uncompensated labor for them.

24. Between 2021-2022, JONATHAN routinely threatened DOE's life and physically harmed her in order to force her to provide him access to her funds and financial resources, and her personal property, which included jewelry, collectibles, family heirlooms, artwork and valuable clothing accessories.

25. Between 2021-2022, DAR and MAHIE were specifically made aware of JONATHAN's violent actions toward DOE, because she told them about the physical harm he inflicted on her, the destruction and theft of her personal property

6

and the funds drained from her accounts and charges he made on her credit cards. They knew this illegal and harmful conduct was intended to isolate DOE, force her into providing uncompensated labor for the Defendants, and strip her of control over her financial resources and autonomy. Both DAR and MAHIE condoned the conduct, and also used it to extract uncompensated labor from DOE.

26. All the DEFENDANTS knew that JONATHAN has a well-established history of drug and gambling addictions, violence toward women, history of financial exploitation of women, and failure to pay his debts and liabilities.

27. All the DEFENDANTS were aware before 2021, that JONATHAN was a defendant in multiple lawsuits by women alleging violent sexual assaults against them, and a lawsuit alleging financial exploitation and theft by his ex-wife, and a lawsuit by his cousin for defrauding him of millions of dollars.

28. All the DEFENDANTS knew that JONATHAN had filed for bankruptcy and had several actual and potential creditors, including casinos, other women, and family members, seeking to recover debts owed to them by JONATHAN.

29. DAR and MAHIE also had a well-established history of funneling money and assets to JONATHAN so as to hide his assets from tax authorities and many creditors. Between 2021-2022, DAR and MAHIE paid JONATHAN a monthly allowance upwards of $75,000 each month. Based on information and belief, DEFENDANTS characterized the monthly allowance as a "loan" even though there was no reasonable expectation that the money would be repaid. DAR and MAHIE also caused N VISION MANAGEMENT, LLC, ("N VISION"), an entity closely affiliated with DAR's business enterprises and managed by his employee, to pay JONATHAN nominal wages to perpetuate a fiction that he is employed by the entity although he performs no services for it.

30. When JONATHAN proposed marriage to her in 2021, DOE was living and working in the state of Florida. She had a successful career in banking, with a good

salary, and solid credit history, and a sizeable, valuable collection of personal property comprised of jewelry, shoes, clothes, handbags and collectibles.

31. DOE believed JONATHAN was a financially stable, sober, and responsible single father with primary custody of his son.  DOE was wholly unaware that JONATHAN had a history of violence and sexual assault against women, financial exploitation of women and family members, or that he was a heroin and gambling addict.

32. In response to JONATHAN's marriage proposal and requests that she live with him in advance of a marriage, DOE agreed to uproot her successful life to move from Florida to California to marry the man she loved and who had proposed to her.

33. DOE moved to Los Angeles County, California and remained employed in the banking industry, working remotely.  She had no intention of abandoning her successful career trajectory, especially in the middle of a global pandemic, or to lose her financial independence.

34. Once DOE moved to Los Angeles, however, JONATHAN with the support of his parents – DAR and MAHIE– started to intimidate DOE through erratic and violent behavior intended to isolate her, and leverage her personal assets, credit, and labor for his personal gain and addictions.

35. After DOE moved to Los Angeles, DAR insisted on putting a vehicle intended for his son JONATHAN's use, in DOE's name.  DOE was generally prohibited from using the vehicle except for driving JONATHAN's minor son to and from school and other appointments, or running personal errands for JONATHAN, DAR or MAHIE.

36. Between 2021-2022, JONATHAN, under either the threat of, or actual, violence demanded and forced DOE to quit her remote employment to assume the duties of a full-time personal assistant for him, and a full-time nanny for his son. Prior to DOE moving to Los Angeles, JONATHAN, through the funds his parents

funneled to him, had employed a full-time personal assistant to care for him and his needs, along with a nanny to care for his minor son.  However, DOE, forced to perform the duties of these two full-time individuals through force, threats of force, and intimidation, was never paid or compensated for any of this work.

37. Between 2021-2022, JONATHAN, under either the threat of, or actual, violence demanded and forced DOE to give him direct access to her savings, retirement and checking accounts, which he promptly drained. Based on information and belief, JONATHAN used these funds to gamble and purchase heroin for his own use.

38. Between 2021-2022, JONATHAN, under both the threat of and actual violence demanded and forced DOE to give him access to DOE's credit cards. Based on information and belief, JONATHAN used these funds to gamble and purchase heroin for his recreational use.

39. Between 2021-2022, JONATHAN, under either the threat of, or actual, violence demanded and forced  DOE to perform his administrative and household tasks previously handled by a personal assistant and nanny, both of whom were paid a salary, including but not limited to, documenting, paying and negotiating his leasing agreements, scheduling and coordinating his legal defense in multiple lawsuits, negotiating liquidation of his accounts with a cryptocurrency exchange, coordinating and negotiating payment on missing claims for property damage, organizing and coordinating his electronic devices and electronic communications, scheduling and coordinating payment for personal meetings including all healthcare appointments, bookkeeping, accounting and financial record keeping, drafting formal correspondence, filing and recordkeeping; coordinating all travel arrangements, managing social media accounts; cooking all meals for JONATHAN's minor son, taking JONATHAN's minor son and from school, washing his clothes, coordinating his arranged visits and meetings and taking him to appointments.

40. JONATHAN began his campaign of physical abuse and harassment toward DOE in or around August 2021, striking and shoving her.  He threw her phone over the balcony of his penthouse apartment, and called DOE's mother to tell her she should be grateful that he only threw a phone, and not DOE over the balcony.  The physical – along with intimidating verbal – abuse continued, and escalated, over the following months up to March 2022.

41. In or around October 2021, JONATHAN flew into a rage grabbing DOE by her cheek leaving a deep mark and then taking his shoe and slapping her on her face with it.  He again grabbed and destroyed DOE's phone, removing its SIM card to prevent DOE from calling the police or anyone for help.  DOE ran into different areas of the apartment trying to escape the violence, and JONATHAN started destroying her personal property and collectables and artwork, and then jumped on top of DOE, punching her with a closed fist multiple times in her back and held bedding over her mouth and nose in an attempt to suffocate her.  As she ran out of the apartment, JONATHAN ripped hair from her head.

42. DOE was forced to flee to a hotel where she physically recuperated from the battery which left her face bruised and cut, wounds where hair was ripped form her head, as well as cuts and bruises all over her torso and bruising and swelling on her arms and legs.  While DOE was recuperating, JONATHAN stole tens of thousands of dollars worth of DOE's personal items that, based on personal information and belief, he then used to fund the purchase of heroin and to fuel his gambling addiction.

43. In or around February 2022 as Superbowl Sunday neared, JONATHAN was becoming frequently enraged toward DOE because she asked him not to abuse illicit drugs and JONATHAN was desperate for funds to purchase drugs and gamble. JONATHAN drained almost $200,000 from accounts belonging to DOE, gaining access to such accounts through his campaign of actual and threatened violence. Upon draining her accounts, JONATHAN immediately transferred these funds to a

Las Vegas casino for gambling.  While in Las Vegas, JONATHAN became enraged as he lost money, and began choking DOE over a hotel bathtub, and pouring hot wax from a burning candle all over DOE's hair and body, and only stopped when another hotel guest in an adjoining room rescued DOE.

44. On at least one instance between August 2021 and March 2022, DOE told DAR that JONATHAN had beaten her and stolen her money, including over $42,000 from her accounts, and destroying tens of thousands of dollars worth of her personal property.  DAR, condoning JONATHAN's behavior, texted DOE that "Mahie & I have not intention of getting in the middle of the relationship between the two of you," and instead resorted to further intimidation, demanding that she give him the keys to the vehicle that he had specifically put in DOE's name to hide from JONATHAN's creditors. Following up on DAR's communications to DOE, MAHIE encouraged DOE to convert and practice Judaism more vigorously in order to cope with JONATHAN's behavior.

45. In 2022, DOE was forced to move into DAR and MAHIE's residence, along with JONATHAN and his minor son.  JONATHAN openly smoked and displayed heroin at the residence with the smell covering the entire property.  DAR condoned JONATHAN's illicit drug use by telling DOE that he himself had smoked heroin recreationally.

46. Additionally, DAR and MAHIE, knowing DOE was under a constant threat of violence by their son, demanded that she perform errands for DAR and MAHIE as ordered, including but not limited to, organizing records, running errands for their businesses, including N VISION, and performing general information technology support services such as software and device set-up and maintenance.  DAR and MAHIE demanded such uncompensated labor when DOE was living with JONATHAN outside of their home, as well as when DOE was forced to live at their residence.

47. DOE made DAR and MAHIE and their employee, contractor and/or agent Ronald Wall, the managing partner of N VISION, aware of JONATHAN's abusive and predatory conduct toward her, informing Wall about the physical harm to her and the destruction of her property and theft of her property.

48. DOE's compromised state -- isolated far from home in California under constant threat of violence with all of her assets and finances depleted -- made her ideal prey for the Mahboubi family. Based on information and belief Defendants had an ongoing scheme unknown to DOE, in order to funnel money to JONATHAN and hide his assets from tax liabilities and/or creditors.

49. On a monthly basis between 2021 and 2022, DAR would give JONATHAN $75,000 "allowance" each month and MAHIE would give JONATHAN additional cash payments. Based on information and belief, DAR and MAHIE and JONATHAN characterized this monthly allowance as a loan so that it would not count as taxable income. Additionally, by characterizing the payments as a loan, DAR could assert sham liens on JONATHAN's property and priority over JONATHAN's other creditors. During that same period of time, N VISION paid a nominal salary to JONATHAN and classified him as an employee even though he did not provide any services to the company.

50. DEFENDANTS, all of them, refused to compensate DOE for the funds and assets that JONATHAN and his family took from her, as well as the work she performed for them, as described herein. Instead, they were all singularly focused on supporting JONATHAN in hiding his tax liabilities and assets from creditors, and extracting uncompensated labor from her.

51. In March 2022, JONATHAN, who was living in DAR and MAHIE's property, along with DOE, became angry with DOE while she was in the bathroom and started pushing and violently striking her in her stomach. She managed to escape into another room, and JONATHAN started ripping apart her jewelry and other expensive items. DOE called "911" for help but became scared as

JONATHAN started threatening her life; she then told the 911 operator she called by mistake and hung up the phone.  DOE tried to run out of the room where JONATHAN had trapped her and he grabbed the back of her head with his hand and smashed her forehead into the doorframe, leaving a large bleeding cut.  The police arrived in response to DOE's 911 call, and DOE, fearing that JONATHAN would take her life in retaliation, said she did not wish to have JONATHAN arrested or press charges.  JONATHAN on the other hand, lied to police officers and said that DOE had attacked him.  She was arrested and taken to the police station where she was held, forced to post a bond and secure legal counsel.  Ultimately, no charges were ever filed against her, as she was the victim – not perpetrator – of domestic violence.

52. Since March 2022, JONATHAN, DAR, and MAHIE have refused to return any of DOE's personal property which based on information and belief, remains in DAR and MAHIE's personal residence. Further, Defendants refused to compensate DOE for any of the funds, personal property, or labor that was forcibly taken from her.

## V.

## CLAIMS

### FIRST CAUSE OF ACTION

**Violation of the Trafficking Victims Protection Act, 18 U.S.C. § 1598**

**(Against All Defendants)**

53. Plaintiff repeats and realleges the allegations made above as if fully set forth herein.

54. The Trafficking Victims Protection Act ("TVPA") is a federal law criminalizing conduct, including the trafficking of persons, that Congress has reauthorized and amended to create a private right of action for trafficking victims to pursue claims against individuals who have violated the TVPA. 15 U.S.C. § 1595.

55. All DEFENDANTS engaged in labor trafficking in violation of 18 U.S.C. § 1598 because they knowingly provided or obtained Plaintiff's labor or services of Plaintiff by (a) means of force, threats of force, physical restraint, or threats of physical restraint; (b) means of serious harm or threats of serious harm to that person or another person; (c) means of the abuse or threatened abuse of law or legal process; and/or (d) means of any scheme, plan, or pattern intended to cause Plaintiff to believe that, if she did not perform such labor or services, Plaintiff would suffer serious harm or physical restraint.

56. All DEFENDANTS knew that Plaintiff was a successful, employed woman who was lured to California by JONATHAN under the pretense of a romantic relationship, and that he began violently beating her and threatening her in or around August 2021, and continued through March 2022.

57. All DEFENDANTS knew JONATHAN lured DOE from Florida to California, forcing her to quit her employment and successful career, give him access to her credit cards, bank accounts, and retirement accounts, which he subsequently drained in both California and other states, including at casinos in Nevada.

58.  All DEFENDANTS knowingly worked in concert to financially isolate and devastate Plaintiff in an effort to not only appease JONATHAN's known cruel tendencies, fueled by his illegal drug use, gambling and violence, but to also secure and ensure that she would provide them with free services and labor, including but not limited to organizing records, running errands for their businesses, including N VISION, and performing general information technology support services such as software and device set-up and maintenance, documenting, paying and negotiating leasing agreements, scheduling and coordinating legal defense in multiple lawsuits, negotiating liquidation of accounts with a cryptocurrency exchange, coordinating and negotiating payment on missing claims for property damage, organizing and coordinating his electronic devices and electronic communications, scheduling and

14

coordinating payment for personal meetings including all healthcare appointments, bookkeeping, accounting and financial record keeping, drafting formal correspondence, filing and recordkeeping; coordinating all travel arrangements, managing social media accounts and correspondence; cooking all meals, performing all transport (including to and from school) and laundry, for JONATHAN's minor son.

59. All DEFENDANTS knowingly benefited from the conduct described herein that the DEFENDANTS knew or should have known, violated 15 U.S.C. § 1589.

60. DOE was directly and proximately harmed by DEFENDANTS' violation of 18 U.S.C. § 1589 both physically and financially, with actual losses that exceed $500,000 as to be proven at trial, and is thus entitled to attorney's fees as allowed by 18 U.S.C. § 1595.

## SECOND CAUSE OF ACTION

### Violation of Racketeer Influenced and Corrupt Organizations Act,
### 18 U.S.C. § 1962
### (Against All Defendants)

61. Plaintiff repeats and realleges the allegations made above as if fully set forth herein.

62. All DEFENDANTS have acted in concert in violation of RICO, 18 U.S.C. § 1962 directly and proximately causing harm to DOE both physically and financially, with losses in excess of $500,000 to be proven at trial.

63. As alleged herein, Plaintiff brings claims pursuant to 18 U.S.C. §§ 1962(c) and (d), and 1964 of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against all DEFENDANTS.

64. The following allegations pertain to each claim for relief under RICO.

65. Plaintiffs is a "person," as that term is defined in 18 U.S.C. § 1961(3), who were injured in their business or property as a result of Defendants' wrongful conduct.

66.   All DEFENDANTS are, and at all relevant times were, "persons" within the meaning of 18 U.S.C. § 1961(3), because they are individuals and/or entities capable of holding legal or beneficial interest in property.

67.   Section 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore . . . and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

68.   8 U.S.C. § 1964(c). Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).

69.   RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).

70.   Section 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [§ 1962]."

71.   As alleged throughout this Complaint, the Mahboubi RICO enterprise orchestrated and conspired with others to orchestrate and conduct coordinated schemes designed to steal through a pattern of racketeering activity over $500,000 in funds and personal property belonging to Plaintiff.

72.   All DEFENDANTS conspired to and did conduct their affairs through a growing association-in-fact enterprise, in violation of section §§ 1962(c) and (d), by engaging in a pattern of racketeering activity as defined under § 1961(5), including extortion, and violation of the TVPA, as enumerated under § 1961(1), for the purpose of improperly profiting from the racketeering activity.

73.   As further detailed herein, all DEFENDANTS, in a RICO conspiracy to

secure Plaintiff's funds, access to credit, education, and professional experience through physical violence, continued threats of harm, and deception.  Defendants, all of them, knowingly engaged in this conspiracy to secure free labor from Plaintiff, provide JONATHAN with a source of funding for his illegal conduct, including possession and use of illicit drugs, and concealment of his assets from actual and potential creditors and tax authorities.

74.   All DEFENDANTS were indispensable to the enterprise to ensnare Plaintiff to be physically and financially bound to JONATHAN, DAR, and MAHIE so that she would continue providing uncompensated services to them, through repeated physical beatings, threat of beatings and death, depletion of her bank accounts, retirement accounts, access to credit, use of her credit cards, and destruction of her credit history.

75.   Based on information and belief, by 2021, all DEFENDANTS, knew that JONATHAN had a pattern of assaulting and financially exploiting women and evading creditors.  By that time, two women had filed lawsuits against him for sexual assault, his ex-wife had filed a lawsuit against him for unauthorized use of her credit cards for which she incurred over $100,000 in debt, and his cousin filed a lawsuit against him for defrauding him out of millions of dollars under the pretense of investing in DAR's business ventures.  Additionally, in or around 2013, JONATHAN had filed for bankruptcy to void the debts owed to several creditors, including Las Vegas, Nevada casinos, and in the proceeding DAR represented himself as a secured creditor who claimed to have loaned money to JONATHAN, in order to gain priority in the proceeding, even though DAR and MAHIE had a long history of giving JONATHAN hundreds of thousands of dollars on a monthly basis as an "allowance" without any expectation of payment.

76.   Based upon information and belief, all DEFENDANTS engaged in a pattern of protecting JONATHAN's assets from tax authorities and creditors by concealing

17

his source of income and employment.

77.   Based upon information and belief, DAR and MAHIE knew that prior to August 2021, they were paying JONATHAN to be able to maintain a full-time personal assistant and nanny, and that subsequent to that date, these services were no longer performed by paid employees, but instead being performed by Plaintiff, who was not being compensated for her services.  Additionally, DAR and MAHIE demanded that she also provide uncompensated services to them and their businesses. DAR paid for a leased a car but insisted that it be kept out of JONATHAN's name, and instead placed it in Plaintiff's name, even though Plaintiff had no autonomy to use the vehicle outside of performing unpaid services for DEFENDANTS.

78.   All DEFENDANTS knew that after August 2021, JONATHAN was repeatedly assaulting Plaintiff, making unauthorized charges on her credit cards, draining money from her accounts, and destroying her personal property in a calculated effort to harm, threaten and isolate Plaintiff both physically and financially to ultimately secure her uncompensated labor, as well use her access to monetary funds and assets – through personal property (including, but not limited to, valuable jewelry and artwork), and bank accounts, and credit – to continue engaging in illegal and wrongful conduct including purchasing heroin, gambling, defrauding others, and hiding assets from creditors.

79.   DOE was directly and proximately harmed by DEFENDANTS' violation of 18 U.S.C. § 1962 both physically and financially, with actual losses that exceed $500,000 as to be proven at trial, and is thus entitled treble damages and attorney's fees as allowed by § 1964.

///

///

///

18

### THIRD CAUSE OF ACTION

**Failure to Pay Wages and Overtime Wages**
**In Violation of Cal Labor Code §§ 510, 1194 and 1198**
**(Against All Defendants)**

80.  Plaintiff repeats and realleges the allegations made above as if fully set forth herein.

81.  Article I § 6 of the California Constitution prohibits slavery, and California Labor Code section 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order makes it unlawful to force an employee to work beyond certain established maximum hours of work or below certain established working conditions.  The employment of any individual for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful. Moreover, it was unlawful to employ DOE without compensating her in regular payments of lawful minimum wages up to a certain period of time, providing her with the legally required amount of consecutive off-duty hours each day, along legally required amount of off-duty days after consecutive days of work.  Further, it was unlawful to not compensate DOE at a rate of pay either time-and-one-half or two-times that of a legal regular rate of pay .

82.  Plaintiff routinely worked in excess of twelve hours in a day, without the minimum number of consecutive off-duty hours each day or each week. In fact, Plaintiff generally worked in excess of eighty to one hundred hours a week and was never paid or compensated for any of her work whatsoever.

83.  DEFENDANTS did not even record DOE's actual hours worked, and did not pay her any daily wages, weekly wages, premium workday wages, or overtime pay for the hours she worked.  Plaintiff was entitled to the protections of the applicable IWC Wage Order 15, California Code of Regulations, Title 8, § 11150.

84. Plaintiff was forced to perform the employment duties previously performed by JONATHAN'S personal assistant and nanny, and additional duties for DAR and MAHIE that would have been performed by a personal assistant.  Plaintiff was forced to provide uncompensated services and labor, including but not limited to organizing records, running errands for their businesses, including N VISION, and performing general information technology support services such as software and device set-up and maintenance, documenting, paying and negotiating leasing agreements, scheduling and coordinating legal defense in multiple lawsuits, negotiating liquidation of accounts with a cryptocurrency exchange, coordinating and negotiating payment on missing claims for property damage, organizing and coordinating his electronic devices and electronic communications, scheduling and coordinating payment for personal meetings including all healthcare appointments, bookkeeping, accounting and financial record keeping, drafting formal correspondence, filing and recordkeeping; coordinating all travel arrangements, managing social media platforms; cooking all meals, performing all transport (including to and from school) and laundry, for JONATHAN's minor son.

85. DEFENDANTS failure to pay Plaintiff any compensation, regular and overtime compensation, as required by California law, violates the provisions of California Labor Code is therefore unlawful, and entitles Plaintiff is entitled to recover her unpaid regular and overtime compensation, as well as interest, costs, and attorneys' fees.

86. In violation of state law, DEFENDANTS have knowingly and willfully refused to perform their obligations to compensate Plaintiff for all wages earned and all hours worked.  As a direct result, Plaintiff has suffered substantial losses related to the use and enjoyment of such wages, lost interest on such wages, and expenses and attorneys' fees.

87. As a proximate result of the wrongful acts of all DEFENDANTS, Plaintiff has been harmed in that Plaintiff has suffered, and will continue to suffer, actual, consequential, and incidental financial losses, including, without limitation, loss of income, salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiff's field and damage to Plaintiff's professional reputation, all in an amount according to proof at the time of trial.

88. As a direct, foreseeable, and proximate result of DEFENDANTS' wrongful acts, Plaintiff has suffered, and continues to suffer, substantial losses of earnings and employment benefits, and has suffered humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount proven at trial.

89. Plaintiff is informed and believes, and on that basis alleges, that the aforesaid acts directed toward Plaintiff by DEFENDANTS were carried out with a conscious disregard of Plaintiff's right to be free from such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to section 3294 of the California Civil Code, among other provisions, entitling Plaintiff to punitive damages in an amount appropriate to punish and set an example of DEFENDANTS.

90. The actions alleged herein were taken by managing agents and/or officers of Defendant and/or ratified by managing agents and/or officers of Defendant.  In so doing, said managing agents and/or officers of DEFENDANTS acted with oppression and malice as those terms are used in section 3294 of the California Civil Code.  As such, Plaintiff is entitled to an award of punitive damages.

91. Plaintiff is also legally entitled to an award of attorneys' and experts' fees.

### FOURTH CAUSE OF ACTION

**Extortion**

**(Against All Defendants)**

92. Plaintiff repeats and realleges the allegations made above as if fully set forth herein.

93. JONATHAN threatened to unlawfully injure DOE and used force against DOE, which was endorsed and encouraged by all DEFENDANTS, as set forth herein.

94. DEFENDANTS intended to use fear felt by DOE and the physical force used on her to obtain her consent to give JONATHAN, DAR, and MAHIE access to her funds, credit cards, personal property, and uncompensated labor.

95. As a result of said fear and force, DOE gave JONATHAN access to her funds, credit cards, personal property and uncompensated labor.

96. As a direct, foreseeable, and proximate result of DEFENDANTS' wrongful acts, DOE has sustained substantial economic and non-economic harm for which she seeks actual and punitive damages.

## FIFTH CAUSE OF ACTION

### Conversion

### (Against All Defendants)

97. Plaintiff repeats and realleges the allegations made above as if fully set forth herein.

98. DOE owned and had an interest in and right to possess all the funds held in her banking and investment accounts.

99. DEFENDANTS prevented DOE from accessing her own funds in her personal bank accounts, and investment accounts, and refused to return DOE's funds after she demanded them.

100.    DEFENDANTS' intentional interference with DOE's ability to access and utilize the funds held in her personal banking and investment accounts directly and proximately caused DOE substantial economic and non-economic harm for which Plaintiff seeks actual and punitive damages.

///

///

22

## SIXTH CAUSE OF ACTION

### Defamation

### (Against JONATHAN)

101.    Plaintiff repeats and realleges the allegations made above as if fully set forth herein.

102.    JONATHAN made a series of defamatory statements to police officers in March 2022 about DOE, including but not limited to statements that she had committed criminal acts and/or assaulted him.

103.    JONATHAN failed to use reasonable care to determine the truth of the statements, and knew that in fact, they were false and in fact intended the false statements to obscure the truth that he in fact had a history of committing extortion and violence against DOE and had done so immediately before the police officers arrived at DAR and MAHBOUBI's residence in response to DOE's 911 call for help.

104.    Believing the statements made about DOE, namely that she had engaged in criminal acts, the police officers arrested DOE.

105.    JONATHAN's defamatory statements to police officers in March 2022 directly and proximately caused DOE substantial economic and non-economic harm for which Plaintiff seeks actual and punitive damages.

## SEVENTH CAUSE OF ACTION

### Battery

### (Against JONATHAN)

106.    Plaintiff repeats and realleges the allegations made above as if fully set forth herein.

107.    JONATHAN's violent actions, including those set forth herein, were intended to harm DOE, who never consented to any of JONATHAN's violent conduct or contact that he made with her body.

23

108.     Any reasonable person in DOE's situation would have found JONATHAN's offensive, violent conduct against her offensive.  DOE found JONATHAN's conduct offensive.

109.     DOE sustained physical injuries and suffered extreme emotional anguish as a result of JONATHAN's offensive, violent conduct toward her.

110.     JONATHAN's offensive, violent touching of DOE's body directly and proximately caused DOE substantial economic and non-economic harm for which Plaintiff seeks actual and punitive damages.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial to resolve each and every one of the claims against each and every Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against DEFENDANTS, and each of them, according to proof, as follows:

1.     For compensatory damages in an amount according to proof;

2.     For treble damages as allowed by law;

3.     For punitive and exemplary damages as allowed by law;

4.     For costs, restitution and other damages as allowed by law;

5.     For an award of attorneys' fees and costs, including expert costs;

6.     For an award of pre- and post- judgment interest;

7.     For such other relief as the Court deems just and proper.

DATED:  June 5, 2023               CAMERON JONES LLP

                                                    */s/ Indira J. Cameron-Banks*
                                                    Indira J. Cameron-Banks
                                                    Terrence M. Jones

                                                    Attorneys for Plaintiff
                                                    JANE DOE