UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV23-04370 JAK (Ex) | Date | January 2, 2024 |
| Title | Jane Doe v. Jonathan Mahboubi-Fardi et al | | |

Present: The Honorable JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings: (IN CHAMBERS) ORDER RE DEFENDANTS' MOTION TO DISMISS (DKT. 11); PLAINTIFF'S MOTION TO PROCEED UNDER THE PSEUDONYM JANE DOE (DKT. 18)

I. Introduction

On June 5, 2023, Jane Doe ("Doe" or "Plaintiff") brought this action against Jonathan Mahboubi-Fardi ("Jonathan"), Daryoush Mahboubi-Fardi ("Dar"), Edna Mahboubi-Fardi a/k/a Mahie Mahboubi-Fardi ("Mahie"), N Vision Management, LLC ("N Vision") and Does 1-10 (collectively, "Defendants"). Dkt. 1.[1] Dar and Mahie are the father and mother, respectively, of Jonathan. *Id.* ¶ 3. N Vision is an entity that is closely affiliated with Dar's business enterprises. *Id.* ¶ 29.

The Complaint advances the following causes of action:

    1.    Violation of the Trafficking Victims Protection Act, 18 U.S.C. § 1598, against all Defendants;
    2.    Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, against all Defendants;
    3.    Failure to pay wages and overtime wages in violation of Cal. Lab. Code §§ 510, 1194, 1198, against all Defendants;
    4.    Extortion, against all Defendants;
    5.    Conversion, against all Defendants;
    6.    Defamation, against Jonathan; and
    7.    Battery, against Jonathan.

*Id.* ¶¶ 53-110. The Complaint seeks compensatory, treble, punitive and exemplary damages; costs and restitution; attorneys' fees and costs; and pre- and post-judgment interest. *Id.* at 24.

On October 2, 2023, Defendants filed a Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (the "MTD"). Dkt. 11. On October 20, 2023, Plaintiff filed an opposition to the Motion (the "MTD Opposition"). Dkt. 15. On October 27, 2023, Defendants filed a reply in support of the Motion (the "MTD

---

[1] The use of first names to identify those with common surnames is designed to facilitate the discussion in this Order. No disrespect is intended by the use of this common convention.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-04370 JAK (Ex) | Date | January 2, 2024 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Mahboubi-Fardi et al | | |

Reply"). Dkt. 17.[2]

On October 30, 2023, Plaintiff filed a Motion to Proceed Under the Pseudonym Jane Doe (the "Jane Doe Motion"). Dkt. 18. On November 6, 2023, Defendants filed an opposition to the Doe Motion (the "Jane Doe Opposition"). Dkt. 19. On November 13, 2023, Plaintiff filed a reply in support of the Doe Motion (the "Jane Doe Reply"). Dkt 20.

A hearing on the MTD and the Jane Doe Motion (collectively, the "Motions") was held on November 27, 2023, and the matters were taken under submission. Dkt. 23. For the reasons stated in this Order, the Jane Doe Motion is **DENIED** and the MTD is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**II.    Background**

   A.    Parties

The Complaint alleges that Plaintiff is an individual who currently resides in Los Angeles County. Dkt. 1 ¶ 12. It alleges that Plaintiff previously lived and worked in Florida but that, after accepting a marriage proposal from Jonathan, she moved to California to live with him. *Id.* ¶¶ 30-32.

The Complaint alleges that Jonathan, Dar and Mahie are individuals who reside in Los Angeles County. *Id.* ¶¶ 13-15.

The Complaint alleges that N Vision is a California corporation whose principal place of business is in Los Angeles County. *Id.* ¶ 16. It alleges that N Vision is closely affiliated with Dar's business enterprises and is managed by an employee of Dar. *Id.* ¶ 29.

   B.    Allegations in the Complaint

The Complaint alleges that, in 2021, Plaintiff was living and working in Florida, where she had a successful career in banking, a good salary, a solid credit history and a valuable collection of personal property, including jewelry, shoes, clothes, handbags and collectibles. *Id.* ¶ 30. It alleges that when Jonathan proposed marriage to Plaintiff, she accepted his proposal and moved to California to be with him. *Id.* ¶ 32. The Complaint alleges that Plaintiff believed Jonathan to be financially stable, sober and a responsible single father with primary custody of his son. *Id.* ¶ 31. It alleges that Plaintiff was unaware of Jonathan's history of violence and sexual assault against women, his past financial exploitation of women and family members, or his heroin and gambling addictions. *Id.*

The Complaint alleges that, upon Plaintiff's arrival in Los Angeles, she first moved in with Jonathan but later moved, along with Jonathan and his minor son, into Dar and Mahie's personal residence. *Id.* ¶ 33, 45. The Complaint alleges that Jonathan, with the support of Dar and Mahie, began a campaign of intimidating Plaintiff through the following erratic and violent conduct in order to leverage her personal assets, credit and labor for his own gain. *Id.* ¶ 34.

---

[2] The Reply is procedurally deficient because it exceeds the page limit in the Standing Order. *See* Dkt. 9 § 9.D. Although it will be accepted, Defendants are ordered to comply with the Standing Order with respect to all future filings. A failure to do so could result in the imposition of sanctions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-04370 JAK (Ex) | Date | January 2, 2024 |
| Title | Jane Doe v. Jonathan Mahboubi-Fardi et al | | |

- *First*, the Complaint alleges that Jonathan used violence, threats of violence and intimidation to coerce Plaintiff to quit her remote employment and assume the duties of a full-time, unpaid personal assistant for him and nanny for his son. *Id.* ¶ 36. The Complaint alleges that Plaintiff's duties, which had previously been handled by full-time employees paid by Dar and Mahie, included numerous administrative and household tasks. *Id.* ¶¶ 36, 39, 77.
- *Second*, the Complaint alleges that, in or around August 2021, Jonathan began a campaign of extreme verbal and physical abuse and harassment toward Plaintiff, which continued and escalated until March 2022. *Id.* ¶ 40. The Complaint alleges that the physical abuse and harassment included several violent attacks and beatings, threats of murder, and destruction of Plaintiff's personal property. *Id.* ¶¶ 34, 41, 42, 51. It alleges that Plaintiff feared that if she told police about Jonathan's behavior, he would retaliate by taking her life. *Id.* ¶ 51.
- *Third*, the Complaint alleges that Jonathan used actual violence and threats of violence to gain direct access to Plaintiff's savings, retirement and checking accounts, as well as her credit cards. *Id.* ¶¶ 37-38. It alleges that, between 2021 and 2022, Jonathan removed almost $200,000 from these accounts, and used these funds for gambling and to purchase heroin. *Id.* ¶ 43. The Complaint also alleges that Jonathan, without Plaintiff's consent, stole personal items from Plaintiff that collectively were worth tens of thousands of dollars. *Id.* ¶ 42.
- *Fourth*, the Complaint alleges that Dar and Mahie, knowing Plaintiff was under a constant threat of violence by their son, demanded that she perform errands including organizing records, running errands for N Vision and other businesses, and performing general information technology support services. *Id.* ¶ 46. The Complaint alleges that Plaintiff was not compensated for this work. *Id.*

The Complaint alleges that Dar, Mahie, and Ronald Wall, who was the managing partner of N Vision, were specifically made aware of Jonathan's violent and abusive actions toward Plaintiff because she told them about this conduct. *Id.* ¶¶ 25, 44, 47. It alleges that Dar and Mahie knew that Jonathan's illegal and harmful conduct was intended to isolate Plaintiff, to force her to provide uncompensated services for Defendants, to remove her control over her financial resources and to deny her autonomy. *Id.* ¶ 25. The Complaint alleges that Dar and Mahie condoned this conduct and used it personally to extract additional uncompensated services from Plaintiff. *Id.*

The Complaint further alleges that Defendants knew Jonathan's well-established history of drug and gambling addictions, violence toward women, financial exploitation of women and failure to pay debts and liabilities. *Id.* ¶ 26. The Complaint alleges that Defendants were aware that Jonathan was a defendant in multiple lawsuits by women alleging violent sexual assaults against them, a lawsuit alleging financial exploitation and theft by his ex-wife and a lawsuit by his cousin alleging that Jonathan defrauded him of millions of dollars. *Id.* ¶ 27. The Complaint further alleges that Defendants knew that Jonathan had filed for bankruptcy and had several actual and potential creditors, including casinos, other women and family members, who sought to recover debts owed to them by Jonathan. *Id.* ¶ 28.

The Complaint alleges that Dar and Mahie have a well-established history of funneling money and assets to Jonathan and hiding his assets from tax authorities and creditors. *Id.* ¶ 29. It alleges that Defendants transferred the title of Jonathan's leased vehicle to Plaintiff to hide it from Jonathan's creditors. *Id.* ¶ 44. It further alleges that, between 2021 and 2022, Dar and Mahie paid Jonathan a monthly allowance of approximately $75,000. *Id.* ¶ 29. The Complaint alleges that, although there was no reasonable expectation that Jonathan would repay these funds, Dar and Mahie characterized the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-04370 JAK (Ex) | Date | January 2, 2024 |
| Title | Jane Doe v. Jonathan Mahboubi-Fardi et al | | |

payments as a loan to help Jonathan hide his tax liabilities and to assert sham liens on Jonathan's property that would give them priority over claims by Jonathan's other creditors. *Id.* ¶ 29, 49. The Complaint further alleges that Dar and Mahie caused N Vision to pay Jonathan nominal wages as part of falsely classifying him as an N Vision employee, notwithstanding that he did not provide any services to the company. *Id.*

The Complaint alleges that Plaintiff was vulnerable to Jonathan and Defendants because of her isolation from home, Jonathan's constant threats of violence and Jonathan's depletion of her financial accounts and personal property. *Id.* ¶ 48. The Complaint alleges that Defendants have refused to compensate Plaintiff for any of the funds or labor that was taken from her without her consent. *Id.* ¶¶ 50, 52. It alleges that Defendants have also refused to return any of Plaintiff's personal property that remains in the personal residence of Dar and Mahie. ¶¶ 52.

**III.    Analysis**

    A.    Motion to Proceed under Pseudonym

        1.    Legal Standards

"The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010); see also Fed. R. Civ. P. 10(a) (the title of every complaint shall "name all the parties"). This general rule arises from "the bedrock principle that courts and judicial records are open." *Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 993 (N.D. Cal. 2015). However, special circumstances may warrant anonymity, such as claims of a "sensitive and highly personal nature" (*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) (quoting *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993)), or cases where a party is subject to "harassment, injury, ridicule or personal embarrassment" (*United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)). District courts have broad discretion in determining whether parties may proceed anonymously. *Advanced Textile Corp.*, 214 F.3d at 1069. Generally, a party is permitted to do so if "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068. "Courts applying this balancing test have recognized three situations allowing a plaintiff to proceed anonymously: '(1) when identification creates a risk of retaliatory physical or mental harm; (2) when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature; and (3) when the anonymous party is compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution.' " *Heineke v. Santa Clara Univ.*, No. 17-CV-5285-LHK, 2017 WL 6026248, at *5 (quoting *Advanced Textile Corp.*, 214 F.3d at 1068).

        2.    Application

Plaintiff's primary argument in support of her request for leave to proceed anonymously rests on the second *Advanced Textile Corp.* factor, *i.e.*, the protection of a party's privacy in sensitive and highly personal matters that are litigated. *See Advanced Textile Corp.*. 214 F.3d at 1068. Plaintiff argues that "as [she] tries to reestablish gainful employment, her credit, and a stable living environment she remains particularly vulnerable – mentally, physically, and situationally – to the harm that could be caused by the highly personal and sensitive facts in this case being publicly attached to her name." Dkt.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-04370 JAK (Ex) | Date | January 2, 2024 |
| Title | Jane Doe v. Jonathan Mahboubi-Fardi et al | | |

20 at 3. Plaintiff contends, for example, that the Complaint includes many allegations as to extreme conduct and private matters arising from Jonathan's demonstrated pattern of interpersonal and domestic violence, including beatings, threats of murder and destruction of Plaintiff's personal property. Dkt. 18 at 6-7. Plaintiff seeks leave to proceed anonymously to avoid social stigma resulting from the public disclosure of her name in connection with these allegations. *Id.* at 6.

Many of the allegations in the Complaint, including statements about domestic violence and physical harm suffered by Plaintiff, are highly personal and sensitive. However, viewed collectively, the allegations in the Complaint remain of a "different nature than that which typically justifies the use of pseudonyms, such as information about sexual abuse, human trafficking, or mental illness." *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1054 (N.D. Cal. 2020). For example, in *Doe K.G. v. Pasadena Hospital Ass'n, Ltd.*, No. 18-CV-08710-ODW, 2019 WL 1612828 (C.D. Cal. Apr. 15, 2019), the plaintiffs were allowed to proceed anonymously based on their graphic and highly detailed allegations of repeated sexual assault by their doctor. *Id.* at *1. Similarly, the plaintiff in *Doe v. Penzato*, No. CV-10-5154-MEJ, 2011 WL 1833007 (N.D. Cal. May 13, 2011), was allowed to proceed anonymously based on her allegations that she was a victim of human trafficking from Brazil to the United States and was subjected to forced labor and repeated sexual battery. *Id.* at *1, 5. Additionally, in *Doe v. Elson S Floyd Coll. of Med. at Washington State Univ.*, No. 2:20-CV-00145-SMJ, 2021 WL 4197366 (E.D. Wash. Mar. 24, 2021), the plaintiff was allowed to proceed anonymously based on the court's conclusion that "her mental illnesses [including anxiety and depression] *and* status as a survivor of domestic violence ma[d]e her particularly vulnerable to mental harm" resulting from public disclosure of her name. *Id.* at *2 (emphasis added).

The allegations in the Complaint are very serious ones. However, they do not rise to the same level of severity of the allegations in these past cases in which plaintiffs were permitted to proceed under pseudonyms. For example, although Plaintiff has alleged certain abuse and domestic violence, she has not alleged that she suffers from mental illness or is in an emotionally vulnerable state that could be aggravated by proceeding publicly in this matter. *See Doe v. City of Newport Beach*, No. CV-15-0608-JAK, 2015 WL 13917137, at *2 (C.D. Cal. Oct. 30, 2015) ("Allegations of a sexual assault, however, do not automatically tip the balance in favor of allowing a plaintiff to sue under a fictitious name."). Similarly, although Plaintiff argues that she will be stigmatized and/or embarrassed by being associated with the allegations in the Complaint, there is not a sufficient showing that this would cause undue stigma or embarrassment, as in past cases in which plaintiffs were allowed to proceed anonymously. *See Doe v. Revature LLC*, No. 22-CV-1399-TL, 2023 WL 4583470, at *6 (W.D. Wash. July 18, 2023) ("[A] generalized fear of harm to one's personal reputation or professional reputation, even if it might result in economic harm, is not enough to justify anonymity."). For these reasons, it is not sufficiently shown that Plaintiff will suffer "harassment, injury, ridicule or personal embarrassment" by proceeding under her actual name. *Doe*, 655 F.2d at 922 n.1.

Plaintiff further argues, relying on the first *Advanced Textile Corp.* factor, that the public disclosure of her name may subject her to harassment and retaliation by Jonathan or his "unsavory associates with whom he shares gambling and drug addiction." Dkt 18 at 6. Plaintiff argues that if her name were made public, these actors could attempt to harm her employment, housing or professional licenses by publicly "sham[ing] and humiliat[ing] her" in connection with these proceedings. *Id.* at 7. However, it is undisputed that Defendants already know Plaintiff's name and identity. *Id.* at 8. Therefore, allowing Plaintiff to proceed anonymously would not *per se* limit harassment, retaliation by Jonathan or those

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-04370 JAK (Ex) | Date | January 2, 2024 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Mahboubi-Fardi et al | | |

acting in concert with him or other misconduct. Further, should such misconduct occur, Plaintiff could seek appropriate, legal remedies.

For the foregoing reasons, Plaintiff has not adequately shown that privacy concerns require her to proceed anonymously. Moreover, her interest in doing so must be weighed against the possible prejudice to Defendants, who contend that maintaining Plaintiff's anonymity could create logistical inconvenience and complications in terms of discovery, case filings and at any trial. Therefore, because Plaintiff's alleged privacy concerns are no greater than the possible prejudice resulting from her continued anonymity, the Jane Doe Motion is **DENIED**.

    B.    Motion to Dismiss

        1.    <u>Legal Standards</u>

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading must allege facts that, if established, would be sufficient to show that a claim for relief is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A complaint need not include detailed factual allegations but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Fed. R. Civ. P. 12(b)(6) permits a party to move to dismiss a cause of action that fails to state a claim in accordance with the foregoing standards. It is appropriate to grant such a motion only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Fed. R. Evid. 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 453-54 (9th Cir. 1994).

If a motion to dismiss is granted, the court should "freely give leave [to amend] when justice so

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-04370 JAK (Ex) | Date | January 2, 2024 |
| Title | Jane Doe v. Jonathan Mahboubi-Fardi et al | | |

requires." Fed. R. Civ. P. 15(a)(2). Although this policy is to be applied "with extreme liberality" (*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)), allowing leave to amend is inappropriate in circumstances where litigants have failed to cure previously identified deficiencies, or where an amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).

    2.    <u>Application</u>

Defendants argue that Plaintiff's first, third, fourth and fifth causes of action should be dismissed against Dar, Mahie and N Vision. Dkt. 11 at 14-17, 25-30. Defendants further argue that Plaintiff's second cause of action should be dismissed against all Defendants, including Jonathan. *Id.* at 18-25.

    a)    TVPA (Count 1)

    (1)    <u>Legal Standards</u>

The TVPA is "an Act to combat trafficking of persons, especially into the sex trade, slavery, and slavery-like conditions, in the United States and countries around the world through prevention, through prosecution and enforcement against traffickers, and through protection and assistance to victims of trafficking." H.R. Conf. Rep. 106-939, at 1 (2000). The purpose of the act is to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." *Id.* at 3. Many of the victims "are trafficked into the international sex trade, often by force, fraud, or coercion. *Id.* But "trafficking also involves violations of other laws, including labor and immigration codes and laws against kidnapping, slavery, false imprisonment, assault, battery, pandering, fraud, and extortion." *Id.* at 4.

Section 1589(a) of the TVPA imposes liability on primary offenders. *See Ruelas v. Cty. of Alameda*, 519 F. Supp. 3d 636, 644-45 (N.D. Cal. 2021). That provision makes it illegal to obtain or provide the labor of a person by one or a combination of the following:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]

18 U.S.C. § 1589(a)(1)-(4).

"Serious harm" is defined as any "harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-04370 JAK (Ex) | Date | January 2, 2024 |
| Title | Jane Doe v. Jonathan Mahboubi-Fardi et al | | |

compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." *Id.* ¶ 1589(c)(2).

Section 1589(b) of the TVPA imposes liability on those who have benefited from primary offenders' actions in violation of Section 1589(a). *See Ruelas*, 519 F.Supp.3d at 645. It makes it illegal to "benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in" conduct prohibited by Section 1589(a), whether "knowing or in reckless disregard of the fact that the venture engaged in" the prohibited conduct. 18 U.S.C. § 1589(b).

Section 1959(a) authorizes a private right of action for violations of either or both Section 1985(a) and Section 1985(b). *Id.* § 1959(a).

(2)     Application

It is undisputed that the Complaint states a claim against Jonathan as a primary offender in violation of Section 1589(a). *See* Dkt. 11 at 14-17. Plaintiff further contends that Dar, Mahie and N Vision are liable as beneficiaries of Jonathan's TVPA violations because they profited through "participation in [his] venture" in violation of Section 1589(b). Dkt. 15 at 10. Defendants contest this basis for liability on the sole ground that Dar, Mahie and N Vision did not "participate" in Jonathan's "venture" within the meaning of the TVPA. Dkt. 11 at 16 & n.4.

The Ninth Circuit has not addressed the definition on a "venture" or "participation in a venture" for purposes of Section 1958(b) beneficiary liability. However, the parties agree (Dkt. 11 at 16-17; Dkt. 15 at 10-11) that an operative test has been provided by the Eleventh Circuit, which evaluates whether the alleged beneficiary "took part in a common undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021). District Courts in this Circuit have followed this standard when evaluating beneficiary claims under Section 1985(b). *See, e.g.*, *B.J. v. G6 Hosp., LLC*, No. 22-CV-03765-MMC, 2023 WL 6120682, at *4 (N.D. Cal. Sept. 18, 2023); *J.M. v. Choice Hotels Int'l, Inc.*, No. 22-CV-00672-KJM, 2022 WL 10626493, at *3-4 (E.D. Cal. Oct. 18, 2022).

Defendants argue that Dar, Mahie and N Vision cannot be subject to beneficiary liability because "there are no allegations that [they] 'participated' in a common undertaking or enterprise with Jonathan or each other 'involving risk and potential profit' that engaged in forced labor." Dkt. 11 at 17. However, the Complaint, whose allegations must be deemed true for purposes of the MTD, alleges:

> All DEFENDANTS knowingly worked in concert to financially isolate and devastate Plaintiff in an effort to . . .   secure and ensure that she would provide them with free services and labor, including but not limited to organizing records, running errands for their businesses, including N VISION, and performing general information technology support services such as software and device set-up and maintenance, documenting, paying and negotiating leasing agreements, [and] scheduling and coordinating legal defense in multiple lawsuits. . . .

Dkt. 1 ¶ 58.

The Complaint further alleges that Defendants "condoned [Jonathan's] conduct, and also used it to extract uncompensated labor from" Plaintiff. *Id.* ¶ 25. For example, it alleges that Dar and Mahie,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-04370 JAK (Ex) | Date | January 2, 2024 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Mahboubi-Fardi et al | | |

"knowing [Plaintiff] was under a constant threat of violence by their son, demanded that she perform errands" for their home and business. *Id.* ¶ 46. Plaintiff argues that Defendants profited from this venture not only by securing valuable free labor that facilitated their pursuit of personal and commercial endeavors, including N Vision, but also by obtaining services from Plaintiff that allowed them to "conceal their assets and exposure to potential liabilities stemming from Jonathan's actual and potential creditors." Dkt. 15 at 11-12; *see, e.g.*, Dkt. 1 ¶¶ 23-24, 46, 58-59. For these reasons, the Complaint adequately alleges that Defendants participated in a common undertaking involving risk and potential profit from Plaintiff's forced labor. *See also id.* ¶ 23.

Defendants further contest the adequacy of the allegations as to their liability on the ground that "most cases discussing beneficiary liability under Section 1959(a) involve business or commercial relationships with profit motives," a structure that they argue is not applicable here. Dkt. 11 at 17; *see* Dkt. 17 at 7. However, Defendants have not cited any case that specifically required a "business or commercial relationship" for purposes of a venture under Section 1598(b). Dkt. 11 at 17; Dkt. 17 at 7-8. Even if such a relationship were required, the allegations as to the complex business ties among Jonathan, N Vision and Jonathan's parents, who gave Jonathan regular loans and "caused . . . [their entity N Vision] to pay JONATHAN nominal wages" would likely be sufficient to classify him as an employee. Dkt. 1 ¶ 29; *see also id.* ¶ 49.

For the foregoing reasons, because the Complaint has adequately alleged that Defendants participated in a venture in violation of Section 1589(b), and because Defendants do not contest the remaining elements of Plaintiffs' TVPA claim, the MTD is **DENIED** as to Plaintiff's cause of action under the TVPA.

            b)     RICO (Count 2)

Plaintiff alleges that Defendants have violated two provisions of RICO, 18 U.S.C. § 1962(c) and 18 U.S.C 1962(d). Dkt. 1 ¶ 63.

                  (1)     Section 1962(c)

                      (a)     Legal Standards

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must plausibly allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985). "In addition, the conduct must be (5) the proximate cause of harm to the victim." *Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(4). Racketeering activity "is defined to include a number of generically specified criminal acts as well as the commission of one of a number of listed predicate offenses." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 939 (9th Cir. 2006).

A pattern "requires at least two acts of racketeering activity" within a ten-year period (18 U.S.C. §

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-04370 JAK (Ex) | Date | January 2, 2024 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Mahboubi-Fardi et al | | |

1961(5)), although "[t]he Supreme Court has concluded that . . . Congress had a 'fairly flexible concept of a pattern in mind.' " *United States v. Freeman*, 6 F.3d 586, 596 (9th Cir. 1993) (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). To allege a pattern, a plaintiff "must show that the racketeering predicates are related, and that they amount to or pose an [implicit or explicit] threat of continued criminal activity." *H.J., Inc.*, 492 U.S. at 239 (emphasis in original).

RICO should be "read broadly" and "liberally construed." *Sedima*, 473 U.S. at 497-98.

(b) Application

Plaintiff alleges that Defendants are liable under Section 1962(c) because they "orchestrated and conspired with others to orchestrate and conduct coordinated schemes designed to steal through a pattern of racketeering activity over $500,000 in funds and personal property belonging to Plaintiff." Dkt. 1 ¶ 71; *see id.* ¶¶ 61-79. Defendants argue that the Complaint fails to state a viable claim under Section 1962(c) for four reasons. Dkt. 11 at 19 & n.7.

*First*, Defendants argue that the Complaint lacks factual allegations establishing "racketeering activity" on the part of Dar, Mahie or N Vision. Dkt. 11 at 19-20. However, as Defendants acknowledge (Dkt. 11 at 19), racketeering activity under RICO includes extortion and violations of the TVPA (18 U.S.C. § 1961(1)). For the reasons previously discussed, the Complaint adequately has alleged that Defendants violated the TVPA either as primary offenders (Jonathan) or beneficiaries (Dar, Mahie and N Vision). Therefore, the Complaint adequately alleges at least one act of "racketeering activity" for purposes of Section 1962(c).

*Second*, Defendants contend that the Complaint lacks factual allegations establishing the existence of an "enterprise" for purposes of RICO. Dkt. 11 at 22-25. Because Plaintiff has not alleged that Defendants formed any legal entity, the only possible enterprise that could provide the basis for their alleged scheme is an "association-in-fact" enterprise. *See* 18 U.S.C. § 1961(4); *see* Dkt. 1 ¶ 72. "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). This concept is read broadly to cover any "group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* at 944.

The Complaint adequately alleges that Defendants constituted an "enterprise" under *Boyle* and Section 1961. It alleges that Defendants conspired together to steal funds and personal property from Plaintiff based on a common "purpose of improperly profiting from the racketeering activity." Dkt. 1 ¶¶ 71-73. For example, the Complaint alleges that other Defendants condoned Jonathan's conduct and intentionally funneled funds to Jonathan -- in the form of loans, a nominal salary from N Vision, a vehicle lease and salaries for Jonathan's personal employees, among others -- in order to support him and to allow him to avoid financial liabilities toward the victims of his misconduct. *Id.* ¶¶ 29, 49. It further alleges that Defendants' purported "Mahboubi RICO Enterprise" continued its activities from approximately 2021 to 2022, that all Defendants were indispensable to, and engaged in the actions of the enterprise. *Id.* ¶¶ 71, 74-77. For these reasons, the Complaint has sufficiently provided allegations as to "an ongoing organization, formal or informal, . . . [and] [allegations] that the various associates function as a continuing unit." *Turkette*, 452 U.S. at 583. Moreover, although the Complaint does not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-04370 JAK (Ex) | Date | January 2, 2024 |
| Title | Jane Doe v. Jonathan Mahboubi-Fardi et al | | |

provide detailed allegations as to the claimed enterprise, *e.g.,* about meetings, communications, or discussions of roles or sharing of proceeds, such structural, formalistic features are not necessary to show the existence of an enterprise. *See Boyle*, 556 U.S. at 948 ("[An enterprise] need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods. . . . Members of the group need not have fixed roles . . . The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies.")

*Third*, Defendants argue that the Complaint lacks allegations sufficient, if established, to show a "pattern" of racketeering activity because the alleged RICO scheme does not satisfy the necessary criterion of "continuity." Dkt. 11 at 20-22; *see* 18 U.S.C. § 1961(5). " 'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J.*, 492 U.S. at 241. Because the Complaint clearly alleges that Defendants' racketeering activities ended in March 2022 (Dkt. 1 ¶ 52), and does not allege that the conduct is likely to continue or repeat, Plaintiff's alleged RICO scheme must satisfy the criterion of "continuity," if at all, as a closed-ended scheme. *See Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995) ("Open-ended continuity is the threat that criminal conduct will continue into the future."); *see also H.J.*, 492 U.S. at 243 ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the open-ended] requirement.").

Plaintiff's alleged RICO scheme is also not suitable to be deemed a "closed-ended scheme." The Complaint alleges that Defendants' conduct began in August 2021 and ceased by March 2022, which is an eight-month period. Dkt. 1 ¶ 40, 44, 52, 56, 77-78. However, because closed-ended schemes must "extend[] over a substantial period of time" (*H.J.*, 492 U.S. at 230), the Ninth Circuit has "found no case in which a court has held the requirement to be satisfied by a pattern of activity lasting less than a year." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366-67 (9th Cir. 1992); *see also Nat. Immunogenics Corp. v. Newport Trial Grp.*, No. CV-15-02034-JVS, 2016 WL 11520711, at *17 (C.D. Cal. Aug. 1, 2016) ("[C]ourts virtually always find that activity spanning less than one year does not satisfy the close-ended continuity requirement."). Plaintiff seeks to distinguish these cases by arguing that Defendants' activities are not novel, but were renewed conduct that was taken against other victims who previously interacted with Jonathan. *See* Dkt. 15 at 14-15. However, the Complaint does not offer sufficient factual allegations about those incidents, nor does it tie Defendants' alleged past conduct to any specific predicate act within the scope of RICO. Rather, because Plaintiff has only offered sufficient allegations to establish the alleged predicate acts of the scheme *toward* Plaintiff, and because the Complaint clearly alleges that those acts ceased after an eight-month period, Plaintiff's alleged RICO scheme is, as presently alleged, too truncated to qualify as closed-ended. For this reason, Plaintiff's RICO claim is not adequately alleged due to a lack of claimed continuity.

*Fourth*, Defendants further argue that the RICO claim is not viable because it lacks a nexus to interstate commerce. Dkt. 11 at 24-25. "To prevail on a claim under [RICO], plaintiffs must demonstrate that the enterprise which is involved in or benefits from the racketeering activity is one engaged in, or having an effect on, interstate commerce." *Musick v. Burke*, 913 F.2d 1390, 1398 (1990). Although the nexus between the alleged RICO enterprise and interstate commerce "may be 'minimal' " (*id.*), the Complaint currently makes no allegations about the effects of Defendants' alleged RICO scheme on interstate commerce. Therefore, for this separate reason, the Complaint fails to state a claim under RICO.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-04370 JAK (Ex) | Date | January 2, 2024 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Mahboubi-Fardi et al | | |

For the foregoing reasons, because the Complaint does not contain sufficient allegations to establish that the alleged RICO scheme has continuity or a nexus to interstate commerce, the MTD is **GRANTED** with respect to Plaintiff's cause of action under Section 1962(c) of RICO, without prejudice, *i.e.*, with leave to amend.

(2) Section 1962(d)

(a) Legal Standards

The Complaint also alleges that Defendants are liable under Section 1962(d) of RICO because they "knowingly engaged in [a RICO] conspiracy to secure free labor from Plaintiff," among other purposes. Dkt. 1 ¶ 73. "Section 1962(d)," which is the conspiracy provision of the RICO statute, "provides that '[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section.' " *Baumer v. Pachl*, 8 F.3d 1341, 1345 (9th Cir. 1993).

Stating a claim for RICO conspiracy requires allegations that "two or more people agreed to commit a crime covered by the specific conspiracy statute . . . and that the defendant knowingly and willfully participated in the agreement." *Smith v. United States*, 568 U.S. 106, 110 (2013). "The illegal agreement need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved." *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002). In addition, "conspiracy to violate RICO requires a showing that defendant 'was aware of the essential nature and scope of the enterprise and intended to participate in it.' " *Baumer*, 8 F.3d at 1346 (quoting *United States v. Muskovsky*, 863 F.2d 1319, 1324 (7th Cir. 1988)).

(b) Application

The Complaint adequately alleges that Defendants were knowingly and intentionally engaged in a conspiracy to carry out violations of Section 1962(c) of RICO. Dkt. 1 ¶¶ 72-78. However, for the reasons previously discussed, the Complaint does not adequately allege violations of Section 1962(c) itself. "[T]he failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). Therefore, because the MTD is granted as to Plaintiff's claim under Section 1962(c), it is also **GRANTED** as to Plaintiff's claim under Section 1962(d), without prejudice*, i.e.,* with leave to amend.

c) Failure to Pay Wages and Overtime Wages (Count 3)

(1) Legal Standards

Plaintiff asserts claims against all Defendants for violations of California Labor Code Sections 510 (pertaining to overtime pay), 1194 (pertaining to minimum wages) and 1198 (pertaining to maximum working hours). Dkt. 1 ¶¶ 80-91. It is undisputed that, as a predicate to each of these claims, Plaintiff must proffer adequate allegations to establish that Defendants were Plaintiff's "employer" within the meaning of California law. *Martinez v. Combs*, 49 Cal. 4th 35, 49 (2010); *see* Dkt. 11 at 26; Dkt. 15 at 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-04370 JAK (Ex) | Date | January 2, 2024 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Mahboubi-Fardi et al | | |

The definition of an "employer" for purposes of the California Labor Code is provided in the orders of the California Industrial Welfare Commission ("IWC"), rather than common law. *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1232 (N.D. Cal 2015). The IWC's wage orders set forth three alternative definitions of employment: (i) to "exercise control over the wages, hours, or working conditions" of any person; (ii) to "suffer or permit to work"; and (iii) to "engage, thereby creating a common law employment relationship." *Dynamex Operations W. v. Sup. Ct.*, 4 Cal. 5th 903, 914-15 (2018); *see also Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 947 (N.D. Cal. 2019). These definitions are applicable to joint employment, *i.e,* where more than one employer "control[s] the terms and conditions of employment of the employee." *Wynn v. NBC*, 234 F. Supp. 2d 1067, 1093 (C.D. Cal. 2002).

(2)     Application

Defendants dispute the California Labor Code claims on the ground that Dar, Mahie and N Vision are not employers under California law. Dkt. 11 at 25-28. Plaintiff responds that some or all of the Defendants qualify as "employers" under each of the three definitions of the IWC. Dkt. 15 at 16-19.

*First*, Plaintiff argues that Dar and Mahie qualify as "employers" under the first IWC definition because they had "control over [her] day to day wages, hours, and working conditions." Dkt. 15 at 16. This "control" standard evaluates whether the plaintiff was fundamentally "subject to the control" of the purported employer. *Taylor v. Cox Commc'ns California, LLC*, 283 F. Supp. 3d 881, 886 (C.D. Cal. 2017). "While this language is potentially quite broad in scope, California courts have circumscribed it by denying employer liability for entities that may be able to influence the treatment of employees but lack the authority to directly control their wages, hours or conditions." *Ochoa*, 133 F. Supp. 3d at 1233.

Plaintiff argues that Dar and Mahie controlled her wages because they "held the proverbial purse strings" and, having previously paid the salaries of Jonathan's personal assistant and nanny, "could [have] insist[ed]" on paying Plaintiff for fulfilling those roles. Dkt. 15 at 16-17; *see* Dkt. 1 ¶ 36, 39. Plaintiff further argues that Dar and Mahie were "able to exert ultimate control over Jane Doe's wages, hours, and working conditions especially when she was forced to live in their home with Jonathan, who had decimated her savings and credit." Dkt. 15 at 17. These arguments do not satisfy the legal standard, which requires a showing of more than that Dar and Mahie had the "ab[ility] to influence" Plaintiff's wage, hours, and working conditions (*Ochoa*, 133 F. Supp. 3d at 1233), but instead that they actually did so by, for example, "hir[ing] and fir[ing] plaintiffs, train[ing] and supervis[ing] them, determin[ing] their rate and manner of pay (hourly or piece rate), and set[ting] their hours, telling them when and where to report to work and when to take breaks." *Martinez*, 49 Cal. 4th at 72. Therefore, the allegations in the Complaint are insufficient to establish that Dar and Mahie are "employers" under the first IWC definition.

*Second*, Plaintiff argues that Dar, Mahie and N Vision satisfy the second IWC definition of "employers" because they "suffered and permitted [Plaintiff] to perform uncompensated work under the threat of violence and actual violence." Dkt. 15 at 18. Under the "suffer or permit to work" standard, the "basis of liability is the defendant's knowledge of and *failure to prevent* the work from occurring." *Martinez*, 49 Cal. 4th at 70. Where the putative employer has no right to prevent an individual from working, no employment relationship can be shown. *Henderson v. Equilon Enters.*, LLC, 40 Cal. App. 5th 1111, 1122 (2019). For that reason, this test asks whether the employer had the "power to either cause [the employee] to work or prevent him from working" (*Ochoa*, 133 F. Supp. 3d at 1235 (quoting *Futrell v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-04370 JAK (Ex) | Date | January 2, 2024 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Mahboubi-Fardi et al | | |

*Payday California, Inc.*, 190 Cal. App. 4th 1419, 1434 (2010)) -- that is, whether the employer had "the power to hire and fire" (*Lesnik*, 378 F. Supp. 3d at 949).

Plaintiff argues that Defendants "suffered and permitted" her work because they "knew and allowed" her uncompensated labor to continue. Dkt. 15 at 18. She further argues that Dar and Mahie allegedly knew that her labor filled the prior roles of Jonathan's personal assistant and nanny, whose salaries they had previously paid. *Id.* These arguments fail to satisfy the legal standard. They are an assertion that Defendants knowingly, and without protest, accepted the benefits of Plaintiff's labor. Such a showing "is not enough to establish liability under California law." *Lesnik*, 378 F. Supp. 3d at 948 (internal quotations and citations omitted). Instead, to establish that Defendants "suffered and permitted" Plaintiff's labor, the Complaint must present allegations that Defendants held power over her through their ability to commence or terminate her employment. *See id.* at 948-49. Because the Complaint does not make such allegations, it is insufficient to establish that Dar and Mahie are "employers" under the second IWC definition.

*Third*, Plaintiff argues that Dar and Mahie "engaged" her to work, within the meaning of the third IWC standard, because they "provided [her] shelter -- their home -- and the vehicle in which she was forced to provide uncompensated labor, along with the funds that could have been used to compensate her for her labor." Dkt. 15 at 19. This "engagement" standard considers whether a common law employment relationship has been established between the employer and employee. *Martinez*, 49 Cal. 4th at 64. "[T]he principal test of [a common law] employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 531 (2014). The allegations that Dar and Mahie knew that Plaintiff could be paid, housed her while she did her work and provided her with a vehicle that she was allegedly not otherwise allowed to use (Dkt. 1 ¶¶ 35, 36, 45), do not meet that bar. Therefore, for the same reasons discussed previously, the allegations in the Complaint are inadequate to establish that Defendants "engaged" her within the meaning of the third IWC definition.

For the foregoing reasons, the Complaint does not adequately allege that Defendants constitute "employers" under any of the three IWC definitions. Because only employers may be held liable under the California Labor Code (*Martinez*, 49 Cal. 4th at 49), the MTD is **GRANTED** as to Plaintiff's cause of action under the California Labor Code against Dar, Mahie and N Vision, without prejudice, *i.e.,* with leave to amend.

        d)      Extortion (Count 4)

           (1)    <u>Legal Standards</u>

Civil extortion, which has been recognized as a tort under California law, "is essentially a cause of action for moneys obtained by duress, a form of fraud." *Fuhrman v. Cal. Satellite Sys.*, 179 Cal. App. 3d 408, 426 (1986); *see Monex Deposit Co. v. Gilliam*, 666 F. Supp. 2d 1135, 1136-37 (C.D. Cal. 2009). "[T]he exact contours of this common law tort are not so strictly defined." *See TaiMed Biologics, Inc. v. Numoda Corp.*, No. 10-CV-03260-LB, 2011 WL 1630041, at *5 (N.D. Cal. Apr. 29, 2011). However, the plaintiff generally must show that (1) the defendant made a threatening demand for money; (2) the defendant knew the extortive demand was false; and (3) the plaintiff suffered actual damages. *Intermarketing Media, LLC v. Barow*, No. 20-CV-00889-JLS, 2021 WL 5990190, at *12 (C.D. Cal. May

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-04370 JAK (Ex) | Date | January 2, 2024 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Mahboubi-Fardi et al | | |

4, 2021) (listing cases). Because extortion is, in substance, a fraud claim, it is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(B), which requires that allegations of fraud be made "with particularity." *Id.* at *13.

    (2)  Application

Plaintiff argues that Jonathan extorted her through violence and threats of violence to gain access to her funds, credit cards and personal property and to benefit from her uncompensated labor. *See* Dkt. 15 at 19; Dkt. 1 ¶ 38-39, 93-96. Plaintiff argues that Dar, Mahie, and N Vision also committed extortion because they knew about Jonathan's extortive acts and "endorsed and encouraged" his conduct in order to extract uncompensated labor from Plaintiff. Dkt. 1 ¶ 93; *see id.* ¶ 44, 46-47, 93-96; Dkt. 15 at 19. Defendants do not dispute the adequacy of the claim alleged against Jonathan, but they argue that Dar, Mahie and N Vision may not be held liable because they personally have not committed acts of extortion. Dkt. 11 at 29.

Because extortion requires an act of "duress," the mere acts of "knowing," "condoning" or "taking advantage" of another's allegedly extortionate acts are insufficient to constitute extortion. *Fuhrman*, 179 Cal. App. 3d at 426; *see, e.g., Taylor v. Walmart, Inc.*, No. 10-CV-01138-OWW, 2010 WL 3069337, at *4 (E.D. Cal. Aug. 3, 2010) (dismissing civil extortion claim where "the complaint [did] not adequately allege that Defendant obtained property or money from Plaintiffs [without] their consent, at least in part induced by wrongful use of fear, or that Defendant threatened criminal or civil prosecution"). Moreover, the Complaint makes no allegation that Dar, Mahie, or N Vision individually engaged in force or threats toward Plaintiff, such as direct physical harm or demands -- like those allegedly made by Jonathan (*see, e.g.,* Dkt. 1 ¶ 37) -- that she surrender her property or labor. *See* Dkt. 1 ¶¶ 92-96. Although the Complaint alleges that Defendants "intended to use fear felt by [Plaintiff] and the physical force used on her to obtain" access to her property and labor (*id.* ¶ 94), this language is conclusory and does not include an allegation that Defendants -- in fact, and directly -- used force or fear against Plaintiff. In the absence of such allegations, the Complaint fails to state a claim against Dar, Mahie and N Vision for extortion.

For these reasons, the MTD is **GRANTED** as to Plaintiff's cause of action for extortion against Dar, Mahie and N Vision, without prejudice, *i.e.*, with leave to amend.

    e)  Conversion (Count 5)

    (1)  Legal Standards

"To establish conversion, a plaintiff must show (1) his ownership of or right to possess the property at the time of the conversion, (2) that the defendant disposed of the plaintiff's property rights or converted the property by a wrongful act, and (3) damages." *Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008). A "necessary element of the tort is an intent to exercise ownership over property which belongs to another." *Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 812 (1994).

    (2)  Application

The Complaint alleges that Plaintiff had an interest in and right to possess all the funds held in her

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-04370 JAK (Ex) | Date | January 2, 2024 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Mahboubi-Fardi et al | | |

banking and investment accounts. Dkt. 1 ¶ 98. It alleges that Defendants "prevented [her] from accessing [those] funds," and "refused to return [her] funds after she demanded them." *Id.* ¶ 99. Plaintiff argues that these actions constitute conversion because, through them, Defendants "wrongfully exerted" control over her property. Dkt. 15 at 20.

The Complaint's allegations distill to the contention that Defendants engaged in conversion by refusing to return the funds that were previously located in Plaintiff's banking and investment accounts. *See id.* The Complaint fails to allege that Dar, Mahie or N Vision actually have or had control of, or possession over, those funds. *See generally* Dkt. 1. In the absence of such an allegation, the conversion claim against Defendants is insufficient. *Collin*, 21 Cal. App. 4th at 812. To be clear, the Complaint does allege that Dar and Mahie maintained ownership of Plaintiff's "personal property which based on information and belief, remains in DAR and MAHIE's personal residence." Dkt. 1 ¶ 52. However, because the conversion claim is focused on the presumably intangible, electronic "funds" (*id.* ¶ 99) in her banking and investment accounts, Dar and Mahie's alleged retention of Plaintiff's physical, personal property left at their home is not sufficient to state the claim for conversion. Absent an allegation that Dar, Mahie and N Vision are, or were, in possession of the funds taken from Plaintiff's banking and investment accounts, the Complaint does not adequately allege that Defendants have engaged in conversion of those funds. *See In re Bailey*, 197 F.3d 997, 1000 (1999) (to state a claim for conversion, it is "necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use"); *see also Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (same).

For these reasons, the MTD is **GRANTED** as to Plaintiff's cause of action for conversion against Dar, Mahie and N Vision, without prejudice, *i.e.,* with leave to amend.

### IV.   Conclusion

For the reasons stated in this Order, the Jane Doe Motion is **DENIED** and the MTD is **GRANTED-IN-PART** and **DENIED-IN-PART**. The MTD is **GRANTED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to Count 2, with respect to all Defendants, and as to Count 3, Count 4, and Count 5, with respect to Defendants Dar, Mahie and N Vision. The MTD is **DENIED** as to Count 1. Any amended complaint shall be filed within 30 days of the issuance of this Order.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer     tj